UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **ROBERT LEWIS BATTLE,** | } |
| | } |
| **Plaintiff,** | } |
| | } |
| v. | }  Case No.: 2:24-CV-01484-RDP |
| | } |
| **FRANK BISIGNANO, COMMISSIONER** | } |
| **OF SOCIAL SECURITY[1],** | } |
| | } |
| **Defendant.** | } |

## MEMORANDUM OPINION

Plaintiff Robert Lewis Battle brings this action seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying his claims for disability insurance benefits and supplemental security income. *See* 42 U.S.C. §§ 405(g) and 1383(c). After careful review of the record and the briefs submitted by the parties, the court concludes that the decision of the Commissioner is due to be affirmed.

**I.     Proceedings Below**

Plaintiff completed applications for disability insurance benefits and supplemental security income on May 7, 2021. (Tr. at 235-62). The applications were originally denied by the Social Security Administration ("SSA") on June 17, 2022, and again upon reconsideration on April 20, 2023. (Tr. at 118-27, 130-41). After a hearing was held on October 5, 2023 (Tr. at 45-62), Administrative Law Judge Sheila E. McDonald ("ALJ") issued a February 15, 2024 decision finding that Plaintiff was not disabled. (Tr. at 27-37). On September 12, 2024, the Appeals Council denied Plaintiff's request for reconsideration, making the ALJ's decision the final decision of the

---

[1] On May 7, 2025, Frank Bisignano became the Commissioner of the Social Security Administration. Pursuant to Federal Rule of Civil Procedure 25(d), the court substitutes Commissioner Bisignano as the defendant in the action. *See* Fed R. Civ. P. 25(d) (Although the public officer's "successor is automatically substituted as a party when the predecessor no longer holds office, the "court may order substitution at any time . . . .").

Commissioner. (Tr. at 1-6). This is Plaintiff's appeal to the district court. *Battle v. Social Security Administration, Commissioner*, Case No. 2:24-CV-01484-RDP.

At the October 5, 2023 hearing before the ALJ, Plaintiff testified that he was a fifty-four year old man and had completed the twelfth grade. (Tr. at 49). Plaintiff last worked on March 31, 2021 as a truck driver. (Tr. at 49-50). He is 6'0" tall and weighed 229 lbs. on the date of the hearing but weighed 250 lbs. when he stopped working. (Tr. at 50-51). Plaintiff alleged that he stopped working as a truck driver because he was diagnosed with congestive heart failure, but he has not had any kind of stenting or bypass surgery. (Tr. at 50). His congestive heart failure and high blood pressure are both managed with medication. (*Id.*).

Plaintiff testified that since his heart diagnosis, he has changed his diet. (Tr. at 51). He also testified that he exercises with resistance bands and can jump rope for 30 minutes without stopping, although sometimes he gets short of breath while doing so. (*Id.*). He does not jump rope every day, but he does some kind of exercise daily. (*Id.*). Plaintiff further stated that if he was standing unassisted or sitting in one place, he would have to shift after about five minutes. (Tr. at 55). He can also walk for about ten minutes. (*Id.*). Plaintiff has lived with his mother since December 2021. (Tr. at 53). During the day, he walks, exercises, and reads the Bible. (*Id.*). He also helps his mother clean the house, wash clothes, and cook. (Tr. at 53-54).

Plaintiff gets pain in his chest "every now and then" after he walks, and he takes medication to relieve that pain. (Tr. at 51). Plaintiff previously complained about some nerve pain in his legs and he still gets that pain occasionally, but not often. (Tr. at 52). He stated that he gets the pain if he stands for too long, and that pain is "shooting through [his] legs bad." (*Id.*). The pain sometimes prevents him from walking and standing. (*Id.*). His doctors have not prescribed medication for the leg pain and mainly told him to get "comfortable shoes." (*Id.*). Plaintiff also gets some numbness

in his arms that had been going on for about five months at the date of the hearing, but his doctor had not treated him for it. (Tr. at 52-53).

Plaintiff testified that his heart bothers him the most. (Tr. at 54). He gets dizzy and tires easily. (*Id*.). Because of this, he takes a three to four hour long nap every day. (*Id*.). His legs and feet also bother him, and he experiences pain in his left arm. (*Id*.). On a scale of one to ten, he rated his pain "about a seven." (Tr. at 54-55). To manage his pain, he massages the area. (Tr. at 55). He noted that cannot take a lot of medication because he takes aspirin with his medication. (*Id*.).

## II.     ALJ Decision

Disability under the Act is determined under a five-step test. 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. *Id.* § 404.1520(a)(4)(i). "Substantial gainful activity" is defined as activity that is both "substantial" and "gainful." *Id*. § 1572.  "Substantial" work activity is work that involves doing significant physical or mental activities. *Id*. § 404.1572(a). "Gainful" work activity is work that is done for pay or profit. *Id*. § 404.1572(b). If the ALJ finds that the claimant engages in activity that meets both of these criteria, then the claimant cannot claim disability. *Id*. § 404.1520(b).

Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. *Id*. § 404.1520(a)(4)(ii).  Absent such impairment, the claimant may not claim disability. *Id*.

Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See id*. §§ 404.1520(d), 404.1525, and 404.1526.   If such criteria are met, the claimant is declared disabled. *Id*. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite his impairments. 20 C.F.R. § 404.1520(e).

In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work. *Id*. § 404.1520(a)(4)(iv). If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled. *Id*. If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step. *Id*. § 404.1520(a)(4)(v).

In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with his RFC, age, education, and work experience. *Id*. § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given his RFC, age, education, and work experience. *Id*. §§ 404.1520(g), 404.1560(c).

Here, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2025, and that Plaintiff has not engaged in substantial gainful activity since February 28, 2021, his alleged onset date. (Tr. at 30). Based on the medical evidence presented, the ALJ concluded that Plaintiff had the following severe impairments since his alleged onset date: coronary artery disease, congestive heart failure, hypertension, and obesity. (*Id*.). Nevertheless, the ALJ determined that none of Plaintiff's impairments or combination of impairments met or medically equaled the severity of the listed impairments in 20 C.F.R. Part 404, Subpart B, Appendix 1. (Tr. at 30).

After consideration of the entire record, including medical records from Drs. Hightower, March, Mussell, Enman, Goli, Bittner, and CRNP Sasser, the ALJ determined that Plaintiff had

the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) subject to the following limitations:

> [Plaintiff] can occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl; he should never climb ladders, ropes, or scaffolds; he can have only occasional exposure to extremes of cold, extremes of heat, and atmospheric conditions, i.e., dusts, odors, fumes, and pulmonary irritants; and he should have no exposure to hazards such as unprotected heights and hazardous machinery.

(Tr. at 30-31). In making this determination, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but Plaintiff's statements concerning the "intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Tr. at 31).

Based on this RFC, the ALJ determined that Plaintiff can perform his past relevant work as a security guard because this work does not require the performance of work-related activities precluded by the Plaintiff's RFC. (Tr. at 36). Finally, the ALJ concluded that Plaintiff has not been under a disability from February 28, 2021 through the date of the ALJ decision. (Tr. at 36). The effect of this decision is that Plaintiff is not entitled to disability insurance benefits and supplemental security income. (Tr. at 36).

### III. Plaintiff's Argument for Remand, or Alternatively, for Further Administrative Proceedings

Plaintiff appeals the ALJ's denial of disability insurance benefits and supplemental security income. Plaintiff argues that the ALJ erred under SSR 00-4p by failing to resolve an apparent conflict concerning a hazard limitation between the VE's testimony and the DOT regarding Plaintiff's work as a security guard. (Doc. # 12 at 4). The security guard (merchant patroller) position is the lone past work the ALJ found Plaintiff could perform, and the DOT provides that the position involves occasional exposure to "other environmental conditions." (*Id.* at 5). While not listed in the DOT, the SCO identifies patrolling to prevent crime and being subject to bodily injury or death from law violators as "other environmental conditions." (*Id.* at 6). Thus, because

5

the ALJ's RFC included a limitation for "no exposure to hazards" and "hazards" includes "other environmental conditions" such as patrolling to prevent crime and encounters with law violators, Plaintiff contends he is precluded from engaging in his past relevant work as a security guard. (*Id.* at 9-10).

## IV.     Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## V.     Discussion

The ALJ concluded that, based on Plaintiff's RFC, he could return to his past relevant work as a security guard. As a threshold matter, the court notes that a claimant's RFC is a judgment reserved to the ALJ. *See* 20 C.F.R. § 404.1546(c). The ALJ's determination is not a medical diagnosis; rather, it is a legal determination based on standards set forth in the regulations. 20 C.F.R. § 404.1545.

6

At the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work. *Id*. § 404.1520(a)(4)(iv). If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled. *Id*. In the Eleventh Circuit, an ALJ may not solely rely on a VE's testimony and an ALJ has an affirmative obligation to identify and resolve apparent conflicts between the Dictionary of Occupational Titles ("DOT") and VE testimony. *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1356 (11th Cir. 2018) ("If a conflict is reasonably ascertainable or evident, the ALJ is required to identify it, ask about it, and resolve it in his opinion. We take the word 'apparent' to mean 'seeming real or true, but not necessarily so.'" (citation omitted)). However, the ALJ should not "draw inferences about job requirements that are unsupported by the DOT's text" in seeking to resolve a conflict. *Christmas v. Comm'r of Soc. Sec.*, 791 F. App'x 854, 857 (11th Cir. 2019).

During Plaintiff's hearing, the ALJ posed a hypothetical question to the Vocational Expert ("VE") about an individual of Plaintiff's age, education, and past work, who is able to perform work at the light work exertional level with the following additional limitations:

> This individual could occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl. This individual should never climb ladders, ropes, or scaffolds. This individual can have only occasional exposure to extremes of cold, extremes of heat, and atmospheric conditions . . . . This individual should have <u>no exposure to hazards such as unprotected heights and hazardous machinery.</u>

(Tr. at 59-60) (emphasis added). Based on this hypothetical individual, the VE found that Plaintiff's past relevant work as a security guard would be available. The VE also offered the occupations of assembler, bakery worker, and counter clerk as light work jobs Plaintiff could perform. (Tr. at 60). In response to inquiries from the ALJ, the VE affirmed that his testimony was consistent with the DOT. (Tr. at 61).

Plaintiff argues that a conflict exists between the VE's testimony and the DOT/SCO and that the ALJ was required to resolve it but failed to do so. (Doc. # 12 at 4-10). Specifically, Plaintiff

asserts that Plaintiff's RFC limitation for "no exposure to hazards" conflicts with "the SCO's indication that the merchant patroller job involves occasional exposure to other environmental conditions/hazards; namely, engagement with law violators." (*Id.* at 6).

Plaintiff's argument misses the mark. There is no actual (or even apparent) conflict between the VE's testimony and the DOT. The ALJ presented the VE with a hypothetical individual that should avoid hazards, which were expressly defined as "unprotected heights and hazardous machinery." (Tr. at 59-60). The VE testified that the hypothetical individual would be able to perform Plaintiff's past relevant work as a security guard. (Tr. at 60). The DOT explicitly states that high exposed places and moving mechanical parts are not present in the security guard occupation. U.S. Dept. of Labor, DOT (4th ed. 1991) § 372.667-038, 1991 WL 672717 ("High Exposed Places: Not Present," "Moving Mech. Parts: Not Present"). In short, the VE's testimony is consistent with the DOT, and there was no conflict for the ALJ to resolve.

Plaintiff attempts to stretch his RFC of "no exposure to hazards such as unprotected heights and hazardous machinery" to include "patrolling assigned beat to prevent crime or disturbance of the peace and being subject to bodily injury or death from law violators," as described in the SCO. To get there, Plaintiff starts with the DOT, which provides that the security guard occupation involved occasional exposure to "other environmental conditions." DOT § 372.667-038, 1991 WL 673101. Plaintiff then looks to the SCO, which defines "other environmental conditions" as exposure to weather, extreme cold and heat, humidity, noise, vibration, atmospheric conditions, mechanical parts, electric shock, heights, radiation, explosives, toxic chemicals, and, finally, other environmental conditions. Other environmental conditions are then defined again in the SCO as firefighting, mining, diving, exposure to avalanches, and "patrolling assigned beat to prevent crime or disturbance of the peace and being subject to bodily injury or death from law violators." The court is not persuaded by Plaintiff's rabbit trail of definitions through various SSA publications

when the ALJ clearly defined Plaintiff's RFC as "no exposure to hazards such as unprotected heights and hazardous machinery." (Tr. at 30-31).

Moreover, the DOT's description of security guard contemplates the very hazards Plaintiff claims as conflicts. The DOT description of the duties of a security guard includes "[patrolling] assigned territory to protect persons or property" and "[apprehending] unauthorized persons." DOT, 1991 WL 672717. The description also states that a security guard "may be armed," *id.*, which aligns with Plaintiff's testimony of the security guard occupation as he performed it. (Tr. at 57).

Further, the ALJ's RFC limitations related to heights and machinery flow directly from the opinions of state agency consultants. As described by the ALJ, "Dr. Mussell determined that the claimant should avoid concentrated exposure to extreme cold, extreme and fumes, odors, dusts, gases, and poor ventilation and should avoid all exposure to hazards such as unprotected heights or heavy machinery." (Tr. at 35; *see* Tr. at 79). And, while the ALJ has the affirmative duty to identify apparent conflicts if they exist, at the hearing, Plaintiff neither questioned nor identified the existence of potential inconsistencies between the VE's testimony and the DOT. (Tr. at 61). Rather, the ALJ asked if there were any conflicts between the VE's testimony and the DOT, and the VE replied that his testimony was consistent with the information within the DOT. (*Id.*).

For all these reasons, the court concludes that there was no conflict between the VE's testimony and the DOT.

## VI.   Conclusion

The court concludes that the proper legal standards were applied in the ALJ's determination that Plaintiff can perform his past relevant work as a security guard and is therefore not entitled to disability insurance benefits and supplemental security income. The Commissioner's final

decision is due to be affirmed. A separate order in accordance with this Memorandum of Decision will be entered.

      **DONE** and **ORDERED** this October 6, 2025.

                                            **R. DAVID PROCTOR**
                                            CHIEF U.S. DISTRICT JUDGE